COMMERCIAL UNION ASSURANCE COMPANY OF LONDON, LIMITED, V. GEORGE K. MEYER.

No. 521.

1. **Fire Insurance—Waiver of Proofs.**—It was proper for plaintiff to plead, that after the fire the insurance company examined into the circumstances of the loss and offered a certain sum in settlement, since this amounted to a waiver of the preliminary proofs of loss required by the policy, and insisted on by the defendant company in its answer.

2. **Same—Total Loss.**—Although a burned building could have been repaired for 50 per cent of its original cost, and so made as good as before the fire, yet the loss may have been total, since a building totally destroyed might be replaced for 50 per cent of its original cost.

3. **Same—Identity of Building.**—Where a building is almost completely destroyed by fire, and so injured as to lose its identity and specific character as a building, the loss is to be regarded as total.

4. **Same.—Charge of Court.**—The jury having found, upon sufficient evidence, that the building was so injured as to constitute a total loss, it was not material error in the court to refuse to charge on the question of fixing a partial loss.

5. **Same—Proofs of Loss.**—Where proofs of loss were defective only in omitting the name of the occupant of the house, and such defect does not appear to have been material or to have injured the insurance company, such defect will not be considered material.

6. **Same—Liquidated Demand.**—Under article 2971, of the Revised Statutes, an insurance policy, where the loss is total, becomes a liquidated demand, though the company may be a foreign corporation; and therefore an offer by the company, in a case where the loss is total, to repair or replace the property, may be disregarded, although the policy provided that this may be done by the company

APPEAL from Dallas. Tried below before Hon. R. E. BURKE.

*Leake, Henry & Reeves*, for appellant.—1. The purpose of the valued policy law of Texas (Revised Statutes, article 2971), providing, that "a fire insurance policy in case of total loss by fire of property insured shall be held and considered to be a liquidated demand against the company for the full amount of such policy," was to make every policy on real estate a valued policy; that is to say, a policy that determines at the date of its issuance the value of the property insured, and the amount of indemnity to be paid in case of loss, thus leaving nothing for future adjustment or arbitration.

This was the only purpose and effect of the statute, and it does not prevent parties to the insurance contract agreeing, that in case of a total loss the same may be satisfied by some method other than by paying money. Pierce v. Randolph, 12 Texas, 296; Fisher v. Blight, 2 Cranch, 358–399; Bosley v. Mattingly, 14 B. Mon., 89; Newell v. The People, 3 Seld., 97; McCluskey v. Cromwell, 1 Kernan, 593; Bidwell v. Walker, 1 Mich., 469; McIver v. Ragan, 2 Wheat., 25; Story on Conflicts of Law, 17; Smith v. Rues, 2 Sumn., 354; Priestman v. United States, 4 Dall., 30; Schooner Paulina v. United States, 7 Cranch, 52; Notley v. Buck, 8 Barn. & Cress., 160; The King v. Commissioners, 6 Am. and Eng. Encyc. of Law, 7; The King v. Burrell, 12 Id., 468; Everett v. Wells, 2 Scott (N. C.), 531; Coe v. Lawrence, 1 El. & Bl., 516; Woodberry v. Berry, 18 Ohio St., 462; Maxwell v. The State, 89 Ala., 150; Niagara County v. The People, 7 Hill, 513; Sedg. on St. and Con. Law, 205; Potter's Dwarris, 146, 579; Denn v. Reid, 27 Me., 286; Railway v. Cohen, 49 Ga., 626; Steere v. Brownell, 124 Ill., 27; Alexander v. Worthington, 5 Md., 485; Rex v. Burrell, 12 Ad. & E., 468.

2. Under the valued policy law of Texas, providing that in case of total loss the amount written in the policy shall be a liquidated demand, it is not against public policy for the parties to the contract to agree that this liquidated demand may be settled and satisfied in some other way than in money, as by replacing the building destroyed with another of like quality and character. Richmond v. Railway, 26 Iowa, 191; Kellogg v. Larkin, 3 Pinney, 133; 56 Am. Dec., 164; Swan v. Swan, 21 Fed. Rep., 299; Walsh v. Fussell, 6 Bing., 163; Chitty on Con., 664.

3. If the policy of insurance requires the insured to do a certain thing, and makes the doing of this thing a condition precedent to a recovery, then there can be no recovery without compliance with the condition, and it is not for the court to dispense with the condition

on the ground of immateriality, for the law can not adjudge that to be immaterial which the parties have agreed is material. Goddard v. Ins. Co., 67 Texas, 71; 1 Biddle on Ins., secs. 557, 572; Ins. Co. v. Coos County, 151 U. S., 452; Miles v. Ins. Co., 3 Gray, 580; Ins. Co. v. Arthur, 30 Pa. St., 315; Davey v. Ins. Co., 20 Fed. Rep., 482; Ripley v. Ins. Co., 30 N. Y., 136; Ferree v. Ins. Co., 67 Pa. St., 373; Fabyan v. Ins. Co., 33 N. H., 203.

4. If the effect of the valued policy law of Texas (article 2971, Revised Statutes) makes every policy on real estate a liquidated demand, payable in money only, the statute is void, because it makes a discrimination against fire insurance companies, not including in its operation tornado and other insurance companies, contrary to the Constitution of the State of Texas. Jaynes v. Reynolds, 2 Texas, 251; Dillingham v. Putnam, 14 S. W. Rep., 303; Bank v. Cooper, 2 Yerg., 599; Wally v. Kennedy, 2 Yerg., 564; Loan Assn. v. Topeka, 20 Wall., 655; Santa Clara County v. Railway, 118 U. S., 394; Mining Co. v. Pennsylvania, 125 U. S., 181; The People v. Hurlbut, 24 Mich., 44–106; The State v. Goodwell (West Va.), 10 S. E. Rep., 285–288.

5. If the effect of the valued policy law of Texas (article 2971, Revised Statutes), makes every policy on real estate a liquidated demand, payable in money only, the statute is void, because it is not within the bounds of legitimate legislation, and is an unwarranted abridgment of the natural and inalienable rights of the citizen, and is in contravention of our constitutional guaranties. Godcharles v. Wiggiman, 113 Pa. St., 354; Wilder v. Railway (Mich.), 38 N. W. Rep., 289; The People v. Common Council (Mich.), 38 N. W. Rep., 470; Lassam County v. Cone (Cal.), 14 Pac. Rep., 100; Chair Co. v. Reynolds, 43 N. W. Rep., 1006; City of Jaynesville v. Carpenter, 20 Am. St. Rep., 123; Bank v. Sharpe, 6 How. (U. S.), 301; Street Railway v. Memphis, 53 Fed. Rep., 715; Railway v. Beckwith, 129 U. S., 26; Mugler v. Kansas, 123 U. S., 661; In re Jacobs, 98 N. Y., 108; Dent v. West Virginia, 129 U. S., 114; Westervelt v. Gregg, 12 N. Y., 202.

6. A State may exclude foreign corporations, or it may admit them on conditions, but it can not attach conditions which are repugnant to the Constitution and laws of the United States. Barron v. Burnside, 121 U. S., 200; Dent v. Chicago, 10 Wall., 410; Ins. Co. v. Moss, 20 Wall., 445; St. Clair v. Scott, 106 U. S., 350; Fire Assn. v. New York, 119 U. S., 110.

*Bookhout & McLaurin,* for appellee.—1. Where the agent of a company, after notice of the loss, goes to the burned building, examines into the nature of the loss and the extent and character of the same, and then goes to the assured and makes a proposition of settlement, with full knowledge of all the facts, and negotiations are entered into for a settlement and an offer of settlement made, without notice that proof of loss would be required, such acts and negotiations and offer are admissible evidence to show that the insurance company waived the

proof of loss. Ins. Co. v. Dyches, 56 Texas, 565; Ins. Co. v. Clancy, 71 Texas, 5; Ins. Co. v. Clancy, 83 Texas, 113; Ins. Co. v. Coffee, 61 Texas, 287; 2 Wood on Ins., 2 ed., secs. 446, 447, and p. 952, note 2; 1 Wood on Ins., sec. 43.

2. If the insured building is so injured by the fire that it ceases to be, within the meaning of the law, a building, the policy becomes a liquidated demand against the insurance company for its full amount; the true test being, whether the building has lost its identity and specific character as a building. Sayles' Civ. Stats., art. 2971; Ins. Co. v. Garlington, 66 Texas, 103; Ins. Co. v. Fogarty, 19 Wall., 640; Williams v. Ins. Co., 54 Cal., 450; same case, 35 Am. Rep., 77; May on Ins., sec. 421a, p. 644.

3. If the building has lost its identity and character as a building, then under the statutes of the State of Texas, the loss is a total loss, and the policy becomes a valued policy. May on Ins., sec. 30; Havens v. Ins. Co., 27 S. W. Rep., 718; Ins. Co. v. Ice Co., 64 Texas, 578; 1 Wood on Ins., secs. 41, 43.

4. Where a building is destroyed by fire, the policy becomes a valued policy, payable in money, and can only be discharged by the payment of the same in money, and the condition in the policy, that the company shall have the right to rebuild, is in violation of the statutes of the State of Texas. Sayles' Civ. Stats., art. 2971; Ins. Co. v. Ice Co., 64 Texas 578; Ins. Co. v. Garlington, 66 Texas, 103; Fletcher v. Ins. Co., 73 Fed. Rep., 528; 2 W. & W. C. C., sec. 448.

5. The proof of loss was in substantial compliance with the terms of the policy. 1 Wood on Ins., sec. 43; Ins. Co. v. Mayer, 97 Pa. St., 441; 44 Pa. St., 259; 102 Pa. St., 568; 23 Wend., 525.

LIGHTFOOT, CHIEF JUSTICE.—Appellee brought suit on an insurance policy dated December 23, 1890, issued by appellant, by which his property was insured, as follows: One-story frame building and additions, in the sum of $2400; stable building, in the sum of $115; servant's house, in the sum of $65—all situated on Akard street, in the city of Dallas, Texas. And alleged, that on April 7, 1891, while the policy was in force, a fire occurred, totally destroying the dwelling house and the servant's house, whereby he was damaged in the sum of $2465. That on May 1, 1891, he furnished the company the proof of loss, as required by the policy, and that he performed all the conditions required of him by said policy. That shortly after said fire, said company, through its agent, was notified of the loss, and thereupon its agent examined into the nature of the loss, with a view of settling the same, and offered plaintiff the sum of $1750 for his damages; that it admitted its liability, but claimed that it was not liable for the full amount named in the policy; that the company waived all preliminary proofs of loss, and recognized their liability upon said policy in making such examination.

Defendant filed general and special answers, alleging in substance, (1) that plaintiff had refused to submit the amount of loss to appraisers, as provided in the policy; (2) that plaintiff had refused to allow the company to repair or rebuild the property, as they had the right to do under the contract; (3) that no proper proofs of loss had been furnished, in that plaintiff did not state in the proofs of loss by whom and for what purpose the house was occupied at the time of the fire.

In reply, plaintiff pleaded, that the loss was total, and the policy became a valued policy and a liquidated demand for the full amount thereof, and that the claim to rebuild was without right under the statute; that the proper proofs of loss had been presented, and that the defendant company and its agents had full knowledge of the occupancy of the house before and at the time of the fire.

The issuance of the policy was proved as alleged in plaintiff's petition, and the specific stipulations therein relied upon by defendant company were, in substance, as follows: "In the event of disagreement as to the amount of loss, the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and, failing to agree, shall submit their differences to the umpire; and the award in writing of any two shall determine the amount of such loss; the parties thereto shall pay the appraisers respectively selected by them, and shall bear equally the expense of the expense of the appraisal and umpire.

"It shall be optional with this company [the defendant] to take all or any part of the articles at such ascertained or appraised value; also to repair, rebuild, or replace the property lost or damaged with other of like kind and quality, within a reasonable time, on giving notice, within thirty days after the receipt of the proof herein required, of its intention so to do.

"If fire occur, the insured shall give immediate notice of any loss thereby, in writing, to this company, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, make a complete inventory of the same, stating the quantity and cost of each article, and amount claimed thereon; and within sixty days after the fire, unless such time is extended in writing by this company, shall render a statement to this company, signed and sworn to by said insured, stating the knowledge and belief of the insured as to the time and origin of the fire; the interest of the insured, and of all others, in the property; the cash value of each item thereof, and the amount of loss thereon; all incumbrances thereon; all other insurance, whether valid or not, covering any of said property; and a copy of all the descriptions and schedules in all policies, any changes in the title, use, occupation, location, possession, or exposure of said property since the issuing of this policy;

by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of the fire; and shall furnish, if required, verified plans and specifications of any building, fixtures, or machinery destroyed or damaged; and shall also, if required, furnish a certificate of the magistrate or notary public (not interested in the claim as a creditor or otherwise, nor related to the insured) living nearest the fire, stating that he has examined the circumstances, and believes the insured has honestly sustained loss to the amount such magistrate or notary public shall certify.''

From the testimony, and verdict and judgment thereon, we conclude that the dwelling and servant's house insured were burned on April 7, 1891, and were a total loss, and that under the statute such policy became a liquidated demand. That within the time prescribed by the policy, notice and proofs of loss in regular form, as required by the terms of the policy, were delivered to the insurance company, except that such proofs of loss did not show by whom the property was occupied at the time of the fire.

After receiving the proofs of loss, the adjusting agent of the company objected thereto in writing, about May 5, 1891, because the same did not state who was the occupant of the house at the time of the fire, and at the same time notified the insured to furnish verified plans and specifications of the building, and that the insurance company would claim the right, should the parties disagree as to the amount of the loss, to have the same submitted to appraisers. After the loss, an agent of the insurance company procured workmen to examine the building and make an estimate of the loss, which estimate was submitted to the adjusting agent of the company, who had full authority to adjust the loss, and such adjusting agent, after examining into the loss and making estimates thereon with such workmen, offered to settle with the insured by paying him $1750 in money, or to leave the amount of the loss to appraisers to get up estimates for rebuilding the property and submit them to workmen for bids, and to settle by check for the amount it would take to rebuild. (Upon the last proposition there was a controversy in the testimony, the appellant's testimony showing, that the company offered to rebuild, and the appellee's testimony showing, that the company did not offer to rebuild, but only to get estimates on which to settle in money. In deference to the verdict and judgment, as having settled the weight of the testimony, we adopt the latter view of the evidence.)

These propositions were rejected by appellee, and he brought suit for the full amount of the insurance on the dwelling and servant's house. The case was tried, and judgment rendered for appellee (plaintiff) for the sum of $2701.64, from which the insurance company has appealed.

1. The first assignment of error relied upon by appellant is, that the court overruled its special exception to the first amended original petition, setting up that after the fire, appellant, through its agents,

examined into the circumstances of the loss, and offered to settle with plaintiff for $1750.

The allegations of the petition objected to were, in substance, that immediately after the fire, and during the month of April, 1891, defendant company, through its agents, was notified of said fire and loss, entered upon the property, and examined the nature and character of the loss with the view of settling the same, and thereafter offered to pay plaintiff $1750 for his damage sustained by the fire; that said company admitted its liability, but claimed that it was not liable for the full amount stipulated, and that it waived all preliminary proof of loss.

We do not think the allegations of the petition are open to the objections made in the assignment. It is claimed by appellant that the offer was in the nature of a compromise, and for that reason the allegations were improper. The issues as presented had raised the question of failure on the part of the insured to present preliminary proofs of loss, as required by the terms of the policy, and the pleading objected to, was setting up a waiver of such proofs of loss. If the facts as stated in the pleading were true, there was a waiver of the preliminary proofs of loss. Ins. Co. v. Dyches, 56 Texas, 565; Ins. Co. v. Coffee, 61 Texas, 287; Ins. Co. v. Clancy, 71 Texas, 5; Id., 83 Texas, 113; 2 May on Ins., 469c; Boyd v. Ins. Co., 70 Iowa, 325; Ins. Co. v. Staats, 102 Pa. St., 529; Ins. Co. v. Parisot, 35 Ohio St., 35.

2. The next point raised in appellant's brief is the refusal of the court to give the following special instruction to the jury: "The court charges the jury, that if they find from the evidence that the building could have been repaired for 50 per cent of its original cost, and thereby be made as good as it was before the fire, then the loss was not total, and plaintiff in this suit is only entitled to recover what it would cost to put said house in as good condition as it was before the fire."

The question as to whether the loss was total was a question of fact for the jury to find, under appropriate instructions, and it would not be proper for the court to undertake to decide that the loss would not be total when it could be repaired for 50 per cent of its original cost. The rule suggested in this requested charge would be an unsafe one. It might be possible to replace a building for 50 per cent of its original cost, if every vestige of it should be destroyed. The court charged the jury upon this question as follows: "1. The issue of fact for you to determine in this case is, was the dwelling house and servant's house above referred to totally destroyed by fire on April 7, 1891; or were these buildings so injured by fire at such time as to lose their identity and specific character as buildings? If you find that they were so injured, then this would be a total loss. * * * If, on the other hand, you find and believe that the dwelling house and servant's house above referred to were not totally destroyed by fire at the time above set out, that is, April 7, 1891, and if you find and believe

that said buildings were not injured by fire at this time in such a manner as to lose their identity and specific character as buildings, then the loss would not be total." The court did not err in refusing the special instruction asked by appellant.

3. The third assignment of error calls in question the above charge of the court, on the ground, that the court can not undertake to declare what is a total loss. We do not understand that the charge of the court invades the province of the jury. Some of the witnesses had testified, that the debris after the fire was worth but little; that the house had lost its identity as a building; the roof had mostly burned off and fallen in; that there was not a sound door or window left; the floors were burned; that the walls left were only shells, were careened over and knocked out of shape, except one, and it was charred and injured, and that the servant's house was in about the same condition as the dwelling, though it was still standing; and that it would cost about $2300 to replace them. Others testified, that what was left after the fire would not be worth over $25 or $30; that almost everything was destroyed. On the other hand, some of the witnesses for appellant testified that the injury could have been repaired for from 45 to 50 per cent of the original cost of the buildings.

In the case of Insurance Company v. Garlington, 66 Texas, 106, Judge Stayton comments, with approval, upon a similar charge in a California case, as follows: "The court below found that the building was a total loss, and we are of the opinion that the facts stated in the findings justified the conclusion. It was the building that was insured—a specific thing—and not merely the material of which it was constructed. In the case of Williams v. Insurance Company, 54 California, 450, the following charge was affirmed: 'A total loss does not mean an absolute extinction. The question is not whether all the parts and materials composing the building are absolutely or physically destroyed; but whether, after the fire, the thing insured still exists as a building. Although you may find the fact, that after the fire a large portion of the four walls were left standing, and some of the iron work still attached thereto, still, if you find that the fact is, that the building has lost its identity and specific character as a building, you may find that the property was totally destroyed, within the meaning of the policy.' We understand this to be the rule. Nave v. Ins. Co., 37 Mo., 430; Judah v. Randall, 2 Caines' Cases, 324; Huck v. Ins. Co., 127 Mass., 309; Ins. Co. v. Fogarty, 19 Wall., 640; May on Ins., 421a; Brady v. Ins. Co., 11 Mich., 446."

The above doctrine has been accepted as the correct one in this State; and the charge of the court below was in harmony with it.

4. The appellant, in its sixth assignment, complains of the refusal of the court to give the following special instruction: "The court charges the jury, that if they find from the evidence that the loss was not a total loss, but the house could have been repaired for 50 per cent of its original cost; and you further find that defendant, under the

terms of the policy sued on, asked the plaintiff to have the matters concerning the loss submitted to arbitrators, as provided in the policy, and the plaintiff refused to have the loss so arbitrated and determined, then the jury will find for the defendant." This special charge requested by the appellant was refused by the court.

The policy sued upon provided, that in case of disagreement between the parties as to the amount of the loss, the same should be submitted to competent and disinterested appraisers, with power to select an umpire, and the award of any two of them should be binding as to the amount of the loss. There was a disagreement between the parties as to the amount of the loss, and the defendant's general agent, J. R. Polak, by his letter, dated May 5, 1891, addressed to the plaintiff, stated, that he would insist that the question of loss should be submitted to appraisers, under the conditions of said policy. Plaintiff never consented thereto.

It has been held in this State, that where the policy provides for the ascertainment of the *amount* of the loss by appraisement or arbitration, such provision is valid, and can be enforced. Ins. Co. v. Clancy, 83 Texas, 113; Id., 71 Texas, 10, citing Holmes v. Richet, 54 Cal., 307; May on Ins., sec. 493, and other authorities. None of the cases, however, seem to have any application to a valued policy, or to a case where the statute has fixed by positive enactment, that in the event of a total loss, the policy shall be a liquidated demand for the full amount. Our statute is as follows (Revised Statutes, article 2971): "A fire insurance policy, in case of a total loss by fire of property insured, shall be held and considered to be a liquidated demand against the company for the full amount of such policy." * * *

The requested charge is based upon the conditions, that "if they find from the evidence that the loss was not a total loss, but the house could have been repaired for 50 per cent of the original cost," etc. The charge was a proper one, and the court should have given it, so as to clearly have met every phase of the case as presented by the pleadings and evidence. But we do not consider the failure of the court to give the requested charge as reversible error, for the reason, that the charge given by the court clearly submitted to the jury the question as to whether this loss was total or only partial, and the jury found, under facts amply supporting the verdict, that the loss was total. This being the case, questions which might properly arise as to the method of ascertaining the amount of the loss, where such loss is partial, need not be considered as material. In other words, the loss being clearly a total loss, it was not reversible error for the court not to give a charge upon the question of ascertaining a partial loss by appraisement or arbitration. "The action of the District Court in giving or refusing instructions will not be revised, unless, when applied to the facts, there is manifest injury to the party complaining." Dotson v. Moss, 58 Texas, 155; Land Co. v. Williams, 51 Texas, 51.

5. The appellant, under its fourth and ninth errors assigned, complains of the refusal of the court to give the following special instructions: "1. The court charges the jury, that if they find from the evidence that the proofs of loss furnished by plaintiff to defendant did not give the name of the occupant of the house at the time of the fire, and that the defendant, through its adjuster, called for the name of the occupant, and that the plaintiff neglected to amend his proofs of loss by giving the name of such occupant, then the jury will find for the defendant.

"6. If the jury find from the evidence that plaintiff's attention was by defendant called to the defects in the proofs of loss, and asked for the amendment thereof, and plaintiff thereafter neglected to amend same, and that the proofs of loss failed to conform to the provisions of the policy in that respect, then the jury will find for the defendant."

The policy sued on required the assured to furnish proofs of loss, and specifically required him to show therein by whom the building insured was occupied at the time of the fire. The proofs of loss furnished by plaintiff were admitted to be complete, except that the same did not name the occupant of the dwelling at the time of the fire; but stated, that the property was occupied as a dwelling, and did not state the name of the occupant.

Defendant's general agent, J. R. Polak, in his letter to plaintiff dated May 5, 1891, acknowledged receiving the proofs of loss furnished by plaintiff, but stated in his letter that the same were unsatisfactory and incomplete, because they did not state by whom the house was occupied, as required by the policy. He further testified, that plaintiff made no reply to this letter, and that he did not know who such occupant of the house was until the day of the trial of the cause.

From the issues made up as shown by the pleading and the evidence, it does not appear that the name of the occupant of the building was material, or that the omission of the name from the proofs of loss affected the real issues directly or remotely. The agent of the insurance company was on the ground the next day after the fire, with the insured and builders, making estimates of the loss; its regular adjusting agent came within a few days, and the whole matter concerning the loss seems to have been sifted to the bottom, with no material source of information left unexplored. Although the local agent and adjusting agent both resided at Dallas, and were present during the negotiations in attempting to adjust the loss, it seems that neither of them attached sufficient importance to the question to inquire as to the name of the occupant of the building, and Mr. Polak, the adjuster, testified, that he did not know who such occupant was until the day of the trial. The proofs of loss were a substantial compliance with the terms of the policy.

It is claimed by appellee, that the proofs of loss were waived by appellant by its course of dealing with the insured after the fire, but

we do not deem it necessary to enter into a discussion of this question, as it was not submitted to the jury or passed upon by the court below.

It has been held by the Supreme Court of Pennsylvania, that where a building, insured under a valued policy, is destroyed, immediate notice of such total loss given to the insurer dispenses with further notice or technical proof of loss. Roe v. Ins. Co., 149 Pa. St., 94 (34 Am. State Rep., 595); Ins. Co. v. Davis, 98 Pa. St., 280; Ins. Co. v. Moyer, 97 Pa. St., 441; Ins. Co. v. Schollenberger, 44 Pa. St., 259. See also Ins. Co. v. Dougherty, 102 Pa. St., 568.

6.  Under its eighth assignment, appellant complains at the refusal of the court to give this special charge:  "The court further charges the jury, that if they find from the evidence that the defendant offered plaintiff either $1700 or $1750 in money, or offered to arbitrate the question of loss under the terms of the policy, and offered, in the event neither of these propositions were accepted, to repair the house, and that all these propositions were declined by the plaintiff; and they further find that said house could have been repaired at a cost not exceeding 50 per cent of its original cost, then the jury will find for the defendant."

The contention of appellant in its only proposition under this assignment is this, that rebuilding a house totally destroyed, or repairing a house partially destroyed, is but one mode of payment of the loss sustained by the assured, and where the policy provides that this may be done, the same not being violative of any law, or in contravention of public policy, the same is binding upon the insured.

(1) We think that this special instruction would have been misleading, and should not have been given in any event; for the reason, that it presents, in a manner calculated to mislead the jury, several disjunctive propositions, which, taken separately, can not be sustained, and when taken together, appear to have no definite purpose, except to show an effort to compromise or settle a liquidated debt for less than the demand.

(2) Under the language of our statute, the loss being total, the policy must be "held and considered to be a *liquidated demand against the company for the full amount of such policy.*"  Mr. Anderson, in his Law Dictionary, says:  "A liquidated demand has the amount ascertained, settled, by agreement or otherwise."  Mitchell v. Addison, 20 Ga., 53.

"A debt or demand is liquidated when the amount due is agreed upon by the parties, or is fixed by the operation of law."  Anderson's Law Dic., 631.  In this case, the amount due has been liquidated or fixed by operation of law.

In the case of Insurance Company v. Ice Company, 64 Texas, 582, Judge Stayton said:  "The defendant is a foreign corporation, permitted under certain restrictions to do an insurance business in this State.  Rev. Stats., art. 2949, et seq.

"The contract of insurance was consummated here, it was contemplated that it should be executed here, and we are of the opinion that it must be governed by the laws of this State.

"The defendant having elected to do business here under the terms of the statute, must be held to have assented, as to such business, to be governed by the laws of this State, and to have its contracts evidenced by policies here made complete, and here to be enforced, construed as would be a like contract made by a home company.   Thwing v. Ins. Co., 111 Mass., 93; Heebner v. Ins. Co., 10 Gray, 131; Fletcher v. Ins. Co., 13 Fed. Rep., 528; Cox. v. United States, 6 Pet., 202; Wood on Fire Ins., sec. 93.

"The language of the statute referred to is clear, and its purpose evidently was to make all policies on real property, in cases of total loss, valued policies, without reference to stipulations contained in them which would give them a different character but for the statute, which becomes a part of every such contract.   By force of the statute, when the loss is total, the policy evidences a liquidated demand, against the company issuing it, for its full amount."   See also Ins. Co. v. Garlington, 66 Texas, 103; Ins. Co. v. Holland, 2 Ct. App. C. C., sec. 448.

Under the issues as shown by the pleading and evidence, it being fully shown that the loss was total, the demand became liquidated for the full amount of the policy, and the court did not err in declining to instruct the jury, that a refusal by appellee of an offer by appellant to repair the house would defeat the recovery.

We find no material error in the judgment, and it is affirmed.

*Affirmed.*

Delivered November 21, 1894.


ON REHEARING.

LIGHTFOOT, Chief Justice.—Upon a careful reconsideration of all the points raised by appellant in its motion for rehearing, we find no reason to change the judgment heretofore rendered by us.

In our original opinion, in referring to the cases cited from the Supreme Court of Pennsylvania, to the effect, that where a building, insured under a valued policy, is destroyed, immediate notice of such total loss given to the insurer dispenses with further notice or technical proofs of loss, and unqualified approval of such rule may be misleading, and we desire to refer to those cases only in so far as their consideration may be necessary in determining this case, leaving the question of the correctness of that rule undecided, as we do not deem it necessary for the decision of this case.

Here, there was not only immediate notice, but actual technical proofs of loss, omitting only the name of the occupant of the building. There is no claim or pretense of fraud; on the other hand, appellant's counsel, in open court, disclaim any such defense.   It does not appear in any state of the case that the name of the occupant was material,

or that it was relied upon for any purpose whatever. If not actually waived by the conduct of the parties after the fire, it was only a technical omission after the loss occurred, from which it was not shown that any possible injury could have resulted to appellant.

The motion for rehearing is overruled.

*Overruled.*

Delivered January 2, 1895.