Petition for Writ of Mandamus
Conditionally Granted and Opinion filed April 1, 2010.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-09-01057-CV

____________

 

IN RE SLAVONIC MUTUAL FIRE INSURANCE ASSOCIATION, Relator

 

 

 



ORIGINAL PROCEEDING

WRIT OF MANDAMUS

 

 

 



O P I N I O N

 

            In this original proceeding, relator, Slavonic Mutual Fire
Insurance Association, seeks a writ of mandamus ordering the respondent, the
Honorable Mike Miller, presiding judge of the 11th District Court in Harris
County, to abate the underlying case filed under cause number 2009-26523, and enforce
the appraisal clause in the insurance contract between Slavonic and its
insureds, the real parties in interest, Miguel Requena and Leanna
Landin-Requena. See Tex. Gov’t Code Ann. § 22.221 (Vernon 2004); see
also Tex. R. App. P. 52. We conditionally grant the writ.

The Insurance Policy

            Slavonic issued a fire and extended coverage insurance policy
to the Requenas covering their home, which was damaged by Hurricane Ike on
September 12-13, 2008. The policy provides coverage for losses caused by
windstorm, hurricane, and hail, among other specified risks. The policy limit
on the dwelling is $135,000, and claims are subject to a $500 deductible. 

The policy provides that when a loss occurs, the insured must
give notice to Slavonic by providing a sworn proof of loss and any reasonably
necessary supporting documentation. The parties must then ascertain the amount
of the loss. If the parties disagree about the amount of the loss, either party
may demand an appraisal. The policy’s appraisal clause provides as follows:

Appraisal.
In case the insured and this Company shall fail to agree as to the actual cash
value or the amount of loss, then, on the written demand of either, each shall
select a competent and disinterested appraiser and notify the other of the
appraiser selected within twenty days of such demand. The appraisers shall
first select a competent and disinterested umpire; and failing for fifteen days
to agree upon such umpire, then, on request of the insured or this Company,
such umpire shall be selected by a judge of a district court of a judicial
district where the loss occurred. The appraisers shall then appraise the loss,
stating separately actual cash value and loss to each item; and, failing to
agree, shall submit their differences only to the umpire. An award in writing,
so itemized, of any two when filed with this Company, shall determine the
amount of actual cash value and loss. Each appraiser shall be paid by the party
selecting him and the expenses of appraisal and umpire shall be paid by the
parties equally.

The insurance policy does not specify a deadline by which either side
must request appraisal.

The policy further provides that the loss is not payable until sixty days
after the parties have ascertained the amount of the loss, either by agreement
or through the appraisal process. The policy specifically provides that “[n]o
suit or action on this policy for the recovery of any claim shall be
sustainable in any court of law or equity unless all the requirements of this
policy shall have been complied with.” 

Appraisal Process

Almost all insurance policies contain provisions specifying appraisal as
a means of resolving disputes regarding the “amount of loss” for a covered
claim. See State Farm Lloyds v. Johnson, 290 S.W.3d 886, 888 (Tex.
2009). As in this case, appraisal provisions generally provide that either the
insured or the insurer may demand an appraisal pursuant to the terms of the
policy. See In re Allstate Cty Mut. Ins. Co., 85 S.W.3d 193, 195 (Tex. 2002).


In 1888, the Texas Supreme Court first enforced an appraisal clause
similar to the one at issue here. See Scottish Union & Nat’l Ins. Co. v.
Clancy, 71 Tex. 5, 8 S.W. 630, 631 (1888) (holding that appraisal was
condition precedent to suit); see also Scottish Union & Nat’l Ins. Co.
v. Clancy, 83 Tex. 113, 18 S.W. 439, 441 (1892) (holding that insurer’s
attempt to adjust and settle claim did not waive its right to appraisal). Where
an insurance contract mandates appraisal to resolve the parties’ dispute
regarding the value of a loss, and the appraisal provision has not been waived,
a trial court abuses its discretion and misapplies the law by refusing to
enforce the appraisal provision. Scottish Union, 18 S.W. at 440. More
recently, the supreme court has expressed a strong policy in favor of enforcing
appraisal clauses in insurance contracts. See State Farm Lloyds, 290
S.W.3d at 891-93 (holding that insurer is bound by appraisal clause to have
amount of loss determined, even when dispute also involves questions of
causation); Allstate, 85 S.W.3d at 195 (granting mandamus relief to enforce
appraisal provision).

The Insurance Code

The Texas Insurance Code mandates prompt payment of claims. See
Tex. Ins. Code Ann. §§ 542.051-.061 (Vernon 2009). The act is to be liberally
construed to promote its purpose of obtaining prompt payment of insurance
claims. Id. § 542.054. An insurer is required to acknowledge receipt of
a claim, begin an investigation, and request documentation from its insured
within fifteen days of notification of the claim. Tex. Ins. Code Ann. § 542.055(a)
(Vernon 2009). The insurer is to notify the claimant in writing of the
acceptance or rejection of the claim within fifteen days after it receives the
required documentation for proof of loss. Id. § 542.056(a). If the
insurer notifies the claimant it requires more time, the acceptance or
rejection must be made within forty-five days of the notice. Id. §
542.056(d). Section 542.057 provides that a claim must be paid within five
business days after notice that the claim, or a part of the claim, will be
paid. Tex. Ins. Code Ann. § 542.057(a) (Vernon 2009). An insurer’s failure to
comply with the statutorily prescribed timeframes will subject the insurer to
damages, including interest on the amount of the claim and attorney’s fees. See
Tex. Ins. Code. Ann. §§ 542.058(a), 542.060 (Vernon 2009). 

The Claim

The Requenas reported the loss on September 14, 2008, immediately after
the hurricane struck the Houston area.[1]
Slavonic assigned the claim to an adjuster, Charlie Vaughn with All-Tex Claims
Service, and he inspected the house on September 23, 2008. On September 25,
2008, Vaughn mailed the Requenas a “reservation of rights” letter, stating that
“no rights of the company are waived either by taking of a Sworn Proof of Loss
or further investigation as to the cause of this loss, or ascertaining the
amount of loss and damage that occurred.” On October 10, 2008, Vaughn sent his
report to the Requenas. Vaughn determined that the total amount of the loss,
after subtracting depreciation and the policy’s deductable, was $13,165.35, which
included $1,530.70 for roof repairs. Slavonic then sent the Requenas a check in
that amount. 

            On October 17, 2008, the Requenas notified Slavonic that they
had received the check. The Requenas stated that the roofer wanted to replace
the entire roof and the homeowner’s association would not permit only a partial
replacement of the roof.[2]
Slavonic agreed to arrange for a re-inspection. 

On December 17, 2008, another adjuster, Darren Richards, re-inspected
the property and found that the entire roof had already been replaced. The
Requenas provided Richards receipts and a copy of the contract for the new roof
at a cost of $7,560, as well as a receipt for $350 for air conditioning duct
work that was not included in Vaughn’s original estimate. Richards sent his
report to Slavonic on January 14, 2009.[3]
After reviewing the report, Slavonic sent the Requenas a check for $350 for the
duct work, and on January 16, 2009, it sent a letter explaining that a
“complete roof replacement was not justified due to the limited area of
damage.” 

The Lawsuit

            There was no further communication until the underlying suit
was filed in April of 2009 and served on Slavonic on May 8, 2009. Included with
the petition was a “Notice Letter” claiming entitlement to economic damages of
$449,887.50, plus $50,000 for mental anguish and $116,629.16 for costs and
attorney’s fees.[4]
This suit was transferred to the 11th District Court as part of a special docket
of cases arising from residential property insurance claims resulting from
Hurricane Ike. 

On May 14, 2009, Slavonic invoked its right to appraisal
under the policy. After receiving no response from opposing counsel, on May 29,
2009, Slavonic filed a combined plea in abatement and motion to compel
appraisal. In response, the Requenas claimed Slavonic waived its right to
appraisal. After briefing and several hearings, on November 12, 2009, the trial
court ultimately denied Slavonic’s motion, finding waiver. Slavonic then filed
this mandamus proceeding.

Mandamus Review

            Mandamus relief is available if the trial court abuses its
discretion, either in resolving factual issues or in determining legal
principles, when there is no other adequate remedy by law. See Walker v.
Packer, 827 S.W.2d 833, 839-40 (Tex. 1992). A trial court abuses its
discretion if it reaches a decision so arbitrary and unreasonable as to amount
to a clear and prejudicial error of law, or if it clearly fails to analyze or
apply the law correctly. In re Cerberus Capital Mgmt., L.P., 164
S.W.3d 379, 382 (Tex. 2005). 

            The refusal to enforce a contract according to its terms
constitutes an abuse of discretion that may be subject to mandamus relief. See,
e.g., Jack B. Anglin Co., Inc. v. Tipps, 842 S.W.2d 266, 272-73 (Tex. 1992)
(arbitration clause); In re Prudential, 148 S.W.3d 124, 135 (Tex. 2004)
(jury waiver clause); In re AIU Ins. Co., 148 S.W.3d 109, 114 (Tex.
2004) (forum selection clause). The Texas Supreme Court has held that a trial
court’s failure to enforce an appraisal clause is an error of law constituting
an abuse of discretion that cannot be remedied by appeal. Allstate, 85 S.W.3d
at 195-96. 

Trial Court’s Waiver Finding

            In
its sole issue, Slavonic asserts that mandamus should issue to enforce the
appraisal clause because it did not waive its right to appraisal. 

            In
general, parties may waive contractual rights. See Perry Homes v. Cull, 258
S.W.3d 580, 593 (Tex. 2008) (finding no waiver of arbitration). Waiver is the
intentional relinquishment of a known right, or intentional conduct
inconsistent with claiming that right. In re General Elec. Capital Corp.,
203 S.W.3d 314, 316 (Tex. 2006) (orig. proceeding). Waiver is largely a matter
of intent, and for implied waiver to be found through a party’s actions, intent
must be clearly demonstrated by the surrounding facts and circumstances. Jernigan
v. Langley, 111 S.W.3d 153, 156-67 (Tex. 2003) (per curiam); see also
Van I S.D. v. McCarty, 165 S.W.3d 351, 353 (Tex. 2005) (“While waiver
may sometimes be established by conduct, that conduct must be unequivocally
inconsistent with claiming a known right.”). 

            Waiver is ordinarily a question of fact, but when the facts
are admitted or clearly established, it becomes a question of law. Tenneco,
Inc. v. Enterprise Prods. Co., 925 S.W.2d 640, 643 (Tex. 1996); cf. In
re Acadia Ins. Co., 279 S.W.3d 777, 780 (Tex. App.—Amarillo 2007, orig.
proceeding) (denying mandamus relief where trial court resolved factual dispute
concerning whether insurer waived its right to appraisal). The trial court and
parties in this case agree that the facts concerning the actions leading to
Slavonic’s demand for an appraisal are undisputed. We must determine whether
the trial court correctly applied the law to these undisputed facts. 

First, the policy in this case contains an “anti-waiver” clause, which
provides as follows: “No provision, stipulation, or forfeiture of this policy
shall be waived by any requirement, act, or proceedings of this Company
relating to investigation, appraisal, or adjustment of any loss.” The Texas
Supreme Court has given weight to such an anti-waiver clause in insurance cases.
See American Central Ins. Co. v. Bass, 90 Tex. 380, 38 S.W. 1119 (1897)
(holding that insurer did not waive right to contest liability by proceeding
with appraisal where policy contained an anti-waiver clause); see also Zwick
v. Lodewijk Corp., 847 S.W.2d 316, 318 (Tex. App.—Texarkana 1993, writ
denied) (recognizing that while an anti-waiver clause may itself be waived, it
is some evidence of non-waiver). In addition, shortly after the claim
was filed in 2008, Slavonic sent the Requenas written notice that it did not
waive its rights in a reservation of rights letter quoted above. This action clearly
demonstrated Slavonic’s intent not to waive its right to appraisal.

After the loss was reported, Slavonic inspected the property, and when
the Requenas were not satisfied with the value Slavonic assigned for the amount
of loss, Slavonic ordered a re-inspection and added reimbursement for ductwork
to the covered loss. In January of 2009, Slavonic advised the Requenas it would
not cover replacement of the entire roof. No further communication was had
between the parties until suit was filed. The Requenas’ demand was served on
Slavonic with their suit on May 8, 2009. Slavonic invoked its right to an
appraisal six days after it received the demand letter.

The Requenas assert that Slavonic waived its right to appraisal because
it waited an unreasonable amount of time to demand it. They contend that
Slavonic’s May 14, 2009, demand came 118 days after it was clear that the
parties disagreed about the amount of the loss (January 2009). They complain that
Slavonic waited to demand an appraisal until after suit was filed, four months
after its January 2009 letter stating that a complete roof replacement was not
warranted by the damage, and seven months after it first learned that the
Requenas disagreed with the adjustment of the loss. We acknowledge that silence
or inaction for an unreasonable period of time may show an intention to yield a
known right. Tenneco, 925 S.W.2d at 643 (finding waiver of operating
agreement’s terms by three-year silence after transfer of shares).

We are not persuaded by the Requenas’ citation to a recent federal case
in which the court found waiver. See Sanchez v. Prop. & Cas. Ins.
Co. of Hartford, 2010 WL 413687 (S.D.Tex. Jan. 27, 2010) (order). The insured
disputed the adjustment on November 1, 2008, and no further communication was had
until citation for the suit was served on Hartford on May 12, 2009. Id.
*2. The federal court found that Hartford’s delay in invoking the appraisal
clause in its insurance contract established waiver as a matter of law. Id.
*8. The court cited the following facts: two months after the suit was removed
to federal court, Hartford sought abatement due to deficient notice; Hartford
also sought abatement to pursue mediation; and about one month after the
unsuccessful mediation, Hartford sought to invoke the appraisal clause. Id. *2.
We find those facts distinguishable from the case before us, in which appraisal
was invoked six days after receipt of the demand letter and service of the
lawsuit.

We agree, however, that the date of disagreement, or impasse, is the
point of reference to determine whether a demand for an appraisal is made
within a reasonable time. Though this court’s opinion in Laas v. State Farm
is unpublished and has no precedential value, we agree with the reasoning set
forth in the opinion. See Laas v. State Farm Mut. Auto. Ins. Co., No.
14-98-00488-CV, 2000 WL 1125287 at * 7 (Tex. App.—Houston [14th Dist.] 2000, no
pet.) (not designated for publication). In Laas, the date of
disagreement was the date of the insureds’ final demand letter after State
Farm’s offer. Id. This court concluded that the demand for appraisal was
timely and reasonable when made nine days after the date of disagreement. Id.The
date of disagreement in this case was not established until the Requenas sent
their demand letter to Slavonic stating they did not accept Slavonic’s
determination of their claim as set forth in its January 16, 2009, letter. The
timing of Slavonic’s demand for an appraisal six days after receipt of the
Requenas’ demand letter was reasonable.

We decline to follow the intermediate court authorities cited by the
Requenas on the issue of waiver. These opinions do not rely on Texas Supreme
Court authority and are unpersuasive. See Internat’l Serv. Ins. Co. v. Brodie,
337 S.W.2d 414, 417-18 (Tex. Civ. App.—Fort Worth 1960, writ ref’d n.r.e.); Gulf
Ins. Co. v. Carroll, 330 S.W.2d 227, 231-32 (Tex. Civ. App.—Waco 1959, no
writ); Boston Ins. Co. v .Kirby, 281 S.W. 275, 276 (Tex. Civ.
App.—Eastland 1926, no writ). 

The test for waiver of the right to appraisal is set forth in Scottish
Union, in which the supreme court held:

To
constitute waiver, the acts relied on must be such as are reasonably calculated
to induce the assured to believe that a compliance by him with the terms and
requirements of the policy is not desired, or would be of no effect if
performed. The acts relied on must amount to a denial of liability, or a
refusal to pay the loss.

71 Tex. at
10; 8 S.W. at 632. Applying this established test, we conclude that there is no
evidence in this record constituting waiver of the right to appraisal. As in Scottish
Union, there is no evidence that Slavonic denied liability or that it would
refuse to pay the amount of loss that would be determined by appraisal. See
id. We find no evidence of the requisite intent necessary to establish
waiver. See Jernigan, 111 S.W.3d at 156. We conclude that the trial court
abused its discretion in finding Slavonic waived its right to enforce the
appraisal clause. See In re State Farm Lloyds, Inc., 170 S.W.3d 629,
634-35 (Tex. App.—El Paso 2005, orig. proceeding) (conditionally granting
mandamus relief where insured provided no evidence of waiver of appraisal); In
re Clarendon Ins. Co., No. 2-04-305-CV, 2004 WL 2984916 (Tex. App.—Fort
Worth Dec. 23, 2004, orig. proceeding) (mem. op.) (finding no waiver and granting
mandamus relief to enforce appraisal clause); Vanguard Underwriters Ins. Co.
v. Smith, 999 S.W.2d 448, 451 (Tex. App.—Amarillo 1999, orig. proceeding) (granting
mandamus relief and holding that trial court abused its discretion by refusing
to enforce appraisal provision).

Although not dispositive of the waiver issue, we briefly address the
Requenas’ contention that the delay in invoking the appraisal provision
violates the prompt payment provisions of the Insurance Code. The Requenas
complain that the policy in this case, which was issued in 2003, is an older form
that differs from the new HOB policy incorporating the prompt payment deadlines
in the Insurance Code. Both policy forms contain a similar appraisal provision,
and they do not specify a deadline for completing the appraisal process. 

The Insurance Code also does not expressly provide a deadline for
completion of the appraisal process.[5]
Texas courts considering the issue have concluded that full and timely payment
of an appraisal award under the policy precludes an award of penalties under
the Insurance Code’s prompt payment provisions as a matter of law. See Amine
v. Liberty Lloyds of Tex. Ins. Co., No. 01-06-00396-CV, 2007 WL 2264477, *
4 (Tex. App.—Houston. [1st Dist.] Aug. 9, 2007, no pet.) (mem. op.) (holding
that where insurer makes timely payment pursuant to an appraisal award, there
is no violation of the code’s prompt payment deadlines); DeLaGarza v. State
Farm Mut. Auto. Ins. Co., 175 S.W.3d 29, 32-33 (Tex. App.—Dallas 2005), supp.
op. on reh’g, 181 S.W.3d 755, 756 (Tex. App.—Dallas 2005, pet. denied)
(holding that insurer did not fail to meet insurance code deadline for making
payment because duty to send payment never arose when insured did not notify
insurer of his willingness to settle for lesser amount than full claim);
Breshears v. State Farm Lloyds, 155 S.W.3d 340, 344-45 (Tex. App.—Corpus
Christi 2004, pet. denied) (holding that insurer did not breach contract and
insureds were not entitled to payment of penalty, even though final payment was
delayed until completion of appraisal process).

Remedy

            Before
concluding that the writ should issue, we must also determine whether Slavonic has
an adequate remedy by appeal. In making this determination, we consider whether
the benefits of mandamus review outweigh the detriments.  In re BP Prods. N.
Am., Inc., 244 S.W.3d 840, 845 (Tex. 2008) (orig. proceeding).  This
determination requires a “careful balance of jurisprudential considerations”
that involves both “public and private interests.”  In re Prudential Ins.
Co. of Am., 148 S.W.3d 124, 135-36 (Tex. 2004). “Mandamus review of
interlocutory rulings may be “essential to preserve important substantive and
procedural rights . . . , allow the appellate courts to give needed and helpful
direction to the law that would otherwise prove elusive in appeals from final
judgments, and spare private parties and the public the time and money utterly
wasted enduring eventual reversal of improperly conducted proceedings.” Id.
at 136.

            The
denial of an appraisal vitiates or severely compromises the defendant’s ability
to defend a breach-of-contract claim. Allstate, 85 S.W.3d at 196.
Therefore, an appeal will not be an adequate remedy. Id.; State Farm Lloyds,
170 S.W.3d at 634-35. As was the case in Allstate, the trial court’s
action denies Slavonic the development of proof going to the heart of its case,
and therefore it cannot be remedied by appeal. See Allstate, 85 S.W.3d
at 196. We hold that an appeal is an inadequate remedy for the denial of an appraisal
in this case.

While a trial court has no discretion to deny an appraisal, it does have
some discretion as to the timing of the appraisal. See Allstate, 85
S.W.3d at 196 (noting appraisal can go forward and declining to order
abatement). Therefore, we must consider whether the trial court should abate
the case during the appraisal process. The failure to grant a motion to abate
is not ordinarily subject to mandamus. See Abor v. Black, 694 S.W.2d
564, 567 (Tex. 1985) (declining to issue mandamus to correct an “incidental
ruling” denying abatement). 

The insurance policy in this case specifically provides that all
requirements of the policy must be met before suit may be filed. Therefore,
appraisal is a condition precedent to suit. See State Farm Lloyds, 290
S.W.3d at 894. The failure to submit a claim to an appraisal under the terms of
an insurance policy before bringing a lawsuit is grounds for sustaining a plea
in abatement. See Standard Fire Ins. Co. v. Fraiman, 514 S.W.2d 343, 345
(Tex. Civ. App.—Houston [14th Dist.] 1974, no writ) (holding insured may demand
appraisal even when insurer has waived the condition precedent). Parties have a
right to rely on the plain language of the policy providing for appraisal upon
written demand by either party. Id. at 346.

            In
State Farm Lloyds, the Texas Supreme Court recognized that “appraisal is
intended to take place before suit is filed.” 290 S.W.3d at 894. The court
explained that because appraisals do not require attorneys, lawsuits,
pleadings, subpoenas, or hearings, appraisals can generally be completed with
less time and expense. Id. The court further observed that because the
amount of loss must be determined in every property damage claim, appraisals
should generally go forward without preemptive intervention by the courts. Id.
at 895.

An insurer’s remedy to enforce a condition precedent in its
policy is abatement of the case. Lidawi v. Progressive County Mut. Ins. Co.,
112 S.W.3d 725, 735 (Tex. App.—Houston [14th Dist.] 2003, no pet.). In granting
mandamus relief from the trial court’s denial of a motion to compel appraisal,
the Amarillo Court of Appeals directed the trial court to abate the underlying
lawsuit until the completion of appraisal. Vanguard, 999 S.W.2d at 451. As
in this case, in addition to the appraisal provision, the policy contained a
provision that a lawsuit could not be brought before compliance with the policy
provisions. See id. at 450. Concluding that this provision of the policy
was unambiguous, the court held that the insurer was “clearly entitled to have
the appraisal procedure followed and the underlying suit abated until the
completion of that procedure.” Id. at 451; see also In re Foremost
County Mut. Ins. Co., 172 S.W.3d 128, 135 (Tex. App.—Beaumont 2005, orig.
proceeding) (relying on Prudential to grant mandamus relief and order
abatement of the case where the insured failed to comply with a condition precedent
requiring the insured to submit to an examination under oath). 

We conclude that because appraisal is a condition precedent
to suit, abatement is appropriate in this case. The trial court abused its
discretion in denying Slavonic’s request to abate the case during the appraisal
process. We sustain Slavonic’s sole issue.

Conclusion

            We
therefore conditionally grant the petition for a writ of mandamus and direct
the trial court to grant Slavonic’s combined plea in abatement and motion to
compel appraisal. The writ will issue only if the trial court fails to act in
accordance with this opinion.

 

 

 

                                                                                    

                                                                        /s/        Adele
Hedges

                                                                                    Chief
Justice

 

 

Panel
consists of Chief Justice Hedges and Justices Anderson and Frost.









[1]  The Requenas did not file a Proof of Loss form, and
there is no evidence that Slavonic furnished them a form. Slavonic processed
the claim and made payment as if the Proof of Loss had been filed. Accordingly,
we do not address the parties’ obligations regarding the requirement to file a
Proof of Loss form.





[2]  While we find no written correspondence from the
Requenas, the record contains a memo from Jed Walzel of Slavonic that was faxed
to Vaughn, the adjuster, on October 17, 2008. The memo references a phone call
from the Requenas and states: “Got their check but roofer only interested in
full replacement and homeowner’s assn. excuse. Claims damage & loose
shingles over entire roof. I advised we were not responsible for compliance
with desires of homeowner’s assn. or code compliance upgrade. Wants to talk to
Charlie.”





[3]  The report states: “THIS IS A SUPPLEMENT. Hurricane
Ike caused roof damage to front slopes of dwelling which lead to water damage
to front rooms of dwelling. Insured is very adamant about being reimbursed for
roof replacement. His roofer notes shingles were lifted on all slopes. We are
forwarding invoice for your consideration.”





[4]  The Requenas did not wait sixty days after notice
before filing suit as required under the Texas Insurance Code. See Tex.
Ins. Code. Ann. § 541.154(a) (Vernon 2009).





[5] 
Because this statute does not address when a
party should invoke any contractual right to an appraisal proceeding, it also
does not inform the inquiry into what constitutes a reasonable time to invoke
this right in the absence of a specified time for doing so in the policy.